**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CRIMINAL NO. 15-12 (DSD/TNL)

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

v.

**REPORT AND RECOMMENDATION**

RASHAUNDRE DARIONNO
SLAUGHTER,

　　　　　Defendant.

Katharine T. Buzicky, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government; and

Manvir K. Atwal, **OFFICE OF THE FEDERAL PUBLIC DEFENDER**, 300 South 4th Street, Suite 107, Minneapolis, MN 55415, for Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Rashaundre Darionno Slaughter's Motion to Suppress Statements, Admissions and Answers (ECF No. 21). The Court held a motions hearing on March 10, 2015. (*See* ECF No. 29.) Manny Atwal represented Defendant. Bradley Endicott appeared on behalf of the Government. The Court heard the testimony of Special Agent Maureen Lese of the Federal Bureau of Investigation. The Government offered and the Court received the following exhibits:

- Government Exhibit 1 is a CD containing an audio recording of Special Agent Lese's interview of Defendant.

1

The parties provided supplemental briefing on the issues before the Court, the last of which was received on March 24, 2015.

## I.      FINDINGS OF FACT

At 7:00 a.m. on November 6, 2013, law enforcement executed a search warrant at Defendant's residence. (Mot. Hr'g Transcript, March 10, 2015, at 6 ("Tr. 6").) Upon executing the warrant, the officers encountered Defendant's girlfriend, Felicia Kay, who told them that Defendant was at work. (Tr. 6.) Kay told Special Agent Lese that Defendant worked at Hood Packaging in Arden Hills. (Tr. 6.)

Special Agent Lese and Detective Dale Hanson of the Minneapolis Police Department arrived at Hood Packaging between 8:00 and 8:15 a.m. (Tr. 7.) Special Agent Lese arrived at the secure entrance, identified herself as law enforcement, and asked to speak to a manager. (Tr. 8.) Once inside, Special Agent Lese told the manager, Mike Ramirez, that she and Detective Hanson wished to speak with Defendant. (Tr. 8.) Special Agent Lese said that Defendant was not in any sort of trouble, but they had been to his house earlier and learned that he was at work. (Tr. 8.)

Special Agent Lese asked Ramirez whether there was a private room they could use to talk to Defendant, and Ramirez brought the agents to a conference room at the end of a hallway. (Tr. 8-9; 16.) Ramirez then brought Defendant to the conference room and left him with Special Agent Lese and Detective Hanson. (Tr. 9.)

Special Agent Lese identified herself to Defendant as an FBI agent and showed him her credentials. (Tr. 10.) Both Special Agent Lese and Detective Hanson wore plain clothes. (Tr. 15.) She told Defendant that he was not under arrest, that he would not be

arrested that morning, that he did not have to answer any questions, and that he was free to leave. (Tr. 10.) Special Agent Lese also told Defendant that she and Detective Hanson wanted to talk with him about a search warrant that was being executed at his residence that morning. (Tr. 10.) Defendant indicated he would talk with them, and the three of them sat at the table in the conference room. (Tr. 10.) Defendant sat in a chair closest to the door, and Special Agent Lese and Detective Hanson sat across the table from him. (Tr. 9.) After they sat down, Special Agent Lese activated an audio recording device. (Tr. 10; Gov't Ex. 1.) Neither Special Agent Lese nor Detective Hanson informed Defendant of his *Miranda* rights.

Defendant spoke with Special Agent Lese and Detective Hanson for approximately one hour. (Gov't Ex. 1.) All three parties maintained a conversational tone throughout the interview. (Tr. 12.) Neither Special Agent Lese nor Detective Hanson threatened Defendant or attempted to use strong-arm tactics during the conversation. (Tr. 13.) At one point, Defendant said that he wanted to show something to Special Agent Lese on his phone, took out his phone, and gave it to her. (Tr. 12.) At the end of the conversation, they discussed Defendant taking a polygraph to potentially eliminate him as a suspect in the investigation. (Tr. 13.) When the conversation was finished, Defendant escorted Special Agent Lese and Detective Hanson to his supervisor, David Frisk, who would be able to verify Defendant's dates of employment. (Tr. 13.)

Defendant now moves to suppress his statements during the interview, arguing that he was subjected to custodial interrogation without first being made aware of his *Miranda* rights.

## II. CONCLUSIONS OF LAW

### A. Legal Standard

An individual's *Miranda* protections are triggered "only when the [individual] is both in custody and being interrogated." *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir.), *cert. denied*, 503 U.S. 1011 (1992); *accord Miranda v. Arizona*, 384 U.S. 436 (1966). To determine whether an individual is "in custody" for *Miranda* purposes, courts look to "'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "To answer that question, [courts] consider the totality of the circumstances that confronted the defendant at the time of questioning, and inquire whether a reasonable person would have felt that he or she was free to terminate the interview and leave." *United States v. Williams*, 760 F.3d 811, 814 (2014) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

In *United States v. Griffin*, the Eighth Circuit set out six non-exhaustive factors for courts to consider when determining whether an individual is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

922 F.2d 1343, 1349 (8th Cir. 1990). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States v. Axsom*, 289 F.3d 496, 501 (8th Cir. 2002).

Importantly, whether someone is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Czichray*, 378 F.3d at 827. The *Griffin* factors are "simply a rubric for considering the ultimate issue, not a mandatory checklist[.]" *United States v. Perrin*, 659 F.3d 718, 720 (8th Cir. 2011). The ultimate question remains whether, under the totality of the circumstances, Defendant felt he was at liberty to terminate the interrogation and leave the interview. *Id.* (citing *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011)).

### B.  Defendant's Motion to Suppress Should Be Denied

After careful review of the record, the Court determines that Defendant's Motion to Suppress should be denied. With respect to the first *Griffin* factor, Defendant argues that when he was speaking with Special Agent Lese and Detective Hanson, he was in custody for *Miranda* purposes. The Court disagrees. "The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Williams*, 769 F.3d 811, 814 (8th Cir. 2014) (quoting *Griffin*, 922 F.2d at 1349).  At the motions hearing, Special Agent Lese credibly testified that before she activated her recording device, she told Defendant that he did not have to

answer any questions, but that a search warrant was being executed at his house and she wanted to speak with him about it. She also credibly testified that Defendant agreed that she could record the interview. At the beginning of the recorded interview, Special Agent Lese can be heard telling Defendant that a search warrant was being executed at this house, that he was not under arrest, and he would not be arrested that day. Based on the totality of the circumstances, the Court determines that Special Agent Lese's statement that Defendant did not have to answer the officers' questions weighs in favor of a finding that Defendant was not in custody.

On the other hand, the interview occurred in a conference room at Defendant's place of employment. The Government argues that Defendant's workplace is one where he "would be comfortable and less threatened." Mem. in Opp'n (ECF No. 33), at 6 (citing *United States v. Wallace*, 323 F.3d 1106, 1113 (8th Cir. 2003)). This argument likens one's workplace to his home, where "he may be confident, indignant, or recalcitrant" and "more keenly aware of his rights and more reluctant to tell of his indiscretions and criminal behavior." *Miranda*, 384 U.S. at 449-50 (internal quotations omitted). Defendant in this case, however, was approached by his supervisor and told that law enforcement officers were in the building and wanted to speak with him. In such a scenario, a person is less likely to be as "confident, indignant, or recalcitrant" to the officers awaiting him in a conference room as he might at his own home. This does not automatically  transform the atmosphere into a police dominated one, but neither does the fact that the interview occurred at Defendant's workplace ensure that the atmosphere can never be police

dominated. In the Court's view, this factor weighs neither in favor of nor against a finding of custody.

The remaining *Griffin* factors do not require extensive analysis. The officers arrived at Defendant's work and initiated the questioning. Defendant sat in the chair closest to the door while he was being questioned. Nothing in the record indicates that his freedom of movement was in any way limited; Defendant was not handcuffed or otherwise restrained during the interview. Neither Special Agent Lese nor Detective Hanson employed strong arm tactics or deceptive stratagems during the interview, and the atmosphere of the questioning was not police dominated. The officers and Defendant had a relaxed, cooperative conversation. At the end of the conversation, Defendant took Special Agent Lese and Detective Hanson to talk with one of his supervisors.

The Court determines that Defendant was not in custody for *Miranda* purposes when he spoke with Special Agent Lese and Detective Hanson on November 6, 2013. Defendant was told at the beginning of the interview that he did not have to answer the officers' questions and that he was free to leave if he so chose. Although Special Agent Lese and Detective Hanson initiated contact with Defendant, the recording of the interview shows that the atmosphere in the conference room was not police dominated, and Defendant participated willingly in the conversation. Based on the totality of the circumstances, a reasonable person in Defendant's position would have felt free to terminate the encounter. Accordingly, Defendant was not in custody for *Miranda* purposes.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion to Suppress Statements, Admissions and Answers (ECF No. 21) be **DENIED.**


Date:  April 10, 2015                              s/ Tony N. Leung
                                                  Tony N. Leung
                                                  United States Magistrate Judge
                                                  District of Minnesota

                                                  *United States v. Slaughter*
                                                  File No. 15-cr-12 (DSD/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **April 27, 2015**.